(No. 30151.—

FLUOR CORPORATION *et al.*, Plaintiffs in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(LAURA STEWART, Defendant in Error.)

*Opinion filed November 20, 1947—Rehearing denied Jan. 15, 1948.*

JOSEPH B. MCGLYNN, (WAYNE P. WILLIAMS, of counsel,) both of East St. Louis, for plaintiffs in error.

PHILIP G. LISTEMAN, and GROVER C. BORDERS, (LLOYD MIDDLETON, of counsel,) all of East St. Louis, for defendant in error.

Mr. JUSTICE FULTON delivered the opinion of the court:

Laura Stewart, the widow of Charles E. Stewart, filed a claim against Fluor Corporation, Lummus Company and Socony-Vacuum Oil Company, and an award of compensation was made in her favor against all of them, which was confirmed by the circuit court of St. Clair County. Later the claimant had the award set aside as to Fluor Corporation. The award is to recover for the death of her husband, which occurred on October 18, 1943. The remaining defendants have been granted a writ of error to review the action of the circuit court in approving the award. The only question involved is whether the deceased came to his death by an accident arising out of and in course of his employment.

The petition for adjustment of claim was in the usual form and alleged that the employee suffered an accidental injury in the course of his employment which resulted in his death. At the hearing before the arbitrator, the evidence showed that Stewart was about 69 years of age at the time of his death and that he had been employed by the Lummus Company for several months as a water boy on a construction job for the Socony-Vacuum Oil Company. His duties as a water boy required that he carry a water bucket weighing approximately 17 pounds around on the job and that it was necessary for him to go up and down a 20-foot ladder in the performance of his duties. On the day of his death, Stewart arose, ate a hearty breakfast and left for work in apparent good health, arriving at his place of work shortly before 8 A.M. He placed

his lunch in the icebox, walked into a tool shed where he returned a raincoat borrowed on the previous Friday and, after delivering the raincoat, he turned, took a few steps in the direction of his water bucket and fell backwards. There is some conflict in the evidence as to what caused him to fall. However, there is some evidence that he may have fallen on some loose bolts and pipe on the floor, but this is not entirely clear from the record. It does appear that, in falling, the back of his head struck the toe of a fellow employee's shoe, slid off the shoe and struck the concrete floor. After the fall Stewart lay still, his eyes were set and he was gasping for breath. Fellow employees and the company nurse worked over him, giving him artificial respiration, heart stiumulants, and using an inhalator until about 10:30 A.M. While he was being worked upon, it was noticed that he got dark under the eyes and that the rest of his face possibly became flushed. An ambulance was called and he was taken to a hospital where he died shortly after being admitted. The two eyewitnesses to the fall stated at the hearing that they did not know whether there was anything on the floor to cause Stewart to slip or stumble. However, the attorney for the petitioner claimed surprise in this testimony and was permitted to cross-examine these witnesses, using signed statements which he had obtained from them prior to the hearing in which they stated that there was some loose pipe or bolts on the floor, which Stewart slipped on before he fell. On cross-examination, they stated that they did not know for sure about the existence of the objects on the floor.

The company nurse testified that she had had 22 years of training and experience and that when she arrived at the scene of the occurrence some 30 minutes after Stewart had fallen she gave him artificial respiration and a heart stimulant. She stated that she found no evidence of contusions or lacerations about his head and that during the time she treated him she noticed that he became cyanotic

and that his entire face, arms, and hands became blue. Over the petitioner's objections, she testified that she diagnosed Stewart's condition as a coronary ailment and that he had an obstruction to his circulatory system which caused death.

Dr. Charles E. Hill, called as a witness for the plaintiffs in error, testified that he had treated Stewart prior to this occurrence for a heart condition and he stated that it was his opinion that Stewart died of a heart lesion. Dr. J. C. Henry testified as a witness for the defendant in error and in answer to hypothetical questions stated that it was his opinion that Stewart had suffered a skull fracture and hemorrhage which resulted in death. He likewise stated that if a person had a heart condition and suffered a heart attack, he would be more apt to fall forward than backward, since he would double up with pain in his chest. He also stated that if it was a general cyanosis and not a localized cyanosis it would rule out skull fracture and hemorrhage as a possibility and would indicate that death was caused by a heart condition.

There is no contention made that the employee was not engaged in his employment at the time of his fall, since it appears that the starting whistle had already blown and that the men had started to work.

The employers contend that the circuit court, the commission and the arbitrator committed error in holding: (1) that the decedent suffered an accidental injury; (2) that the decedent suffered an accidental injury arising out of and in the course of his employment; and (3) that the decedent died of an accidental injury arising out of and in the course of his employment.

The theory of the employers is that the deceased suffered a heart attack, fell and subsequently died of such heart attack. In the alternative, they contend that if he did suffer any injury in the fall, the injury was caused solely by the fall induced by the heart attack and not from

any risk of the employment. The defendant in error contends that the deceased slipped on some pipe or bolts, causing him to fall, fracturing his skull, and that he died from the effects of the skull fracture. On the other hand, the employers contend that there is no evidence to prove that the deceased slipped on anything or that he suffered a fracture of the skull.

The evidence shows that Stewart fell backwards while in the tool room and that his head came in contact with the cement floor. There is some conflict as to whether his head struck the floor immediately, or struck the floor after slipping from the shoe of a fellow employee. There is a conflict in the evidence as to whether he stumbled or slipped on something on the floor, there being some evidence indicating that there were pipe and bolts on the floor at the time of the accident, but there also being statements made on cross-examination by an eyewitness casting some doubt as to whether or not such objects were definitely on the floor at the time of the fall. The employers seriously urge that the evidence of the eyewitnesses does not definitely indicate the existence of pipe or bolts on the floor at the time of the accident, and does not indicate that Stewart fell or stumbled on those objects. The evidence on this question being in conflict, the decision of the commission is entitled to considerable weight, and we cannot say that its decision is contrary to the manifest weight of the evidence in this regard.

The employers introduced evidence of the nurse who came to the tool room and treated the deceased, indicating that the deceased became blue, or cyanotic, over his entire face and limbs. They produced medical testimony to the effect that a general cyanotic condition would indicate that the deceased was suffering a heart attack at the time. One of the deceased's fellow employees testified that Stewart did not suffer any discoloration under his eyes or on his face at the time he fell, but that after the nurse had been

working on him, he noticed that Stewart began to get dark under the eyes. This witness indicates that Stewart's face could have been flushed, but he could not say for sure because others were working on him giving him artificial respiration. The testimony of this witness does not definitely negative the fact that the cyanosis was general, but this testimony does give weight to the petitioner's theory that a skull fracture caused a hemorrhage which became evident by discoloration under the eyes. There is a definite conflict in the evidence as to the cause of death. Under defendant in error's theory, death was caused by the skull fracture. Under the employers' theory, death was caused by a heart condition. Either theory could have been adopted by the arbitrator in this case, depending upon which witnesses he chose to believe and what evidence he decided was entitled to more weight than the other. We believe that there is substantial evidence in the record in favor of the defendant in error's theory and we cannot say that it is against the manifest weight of the evidence to find that the death was caused by a skull fracture rather than by the heart condition.

It does not appear that any *post-mortem* examination was made, and it does not appear that any physician examined Stewart, either before or after death to see if he had a skull fracture. The company nurse indicates that she did not believe the man had a fractured skull because she could find no abrasions or lacerations about the head. It is admitted that Stewart fell over backwards and that his head did strike the concrete floor. There is nothing in the evidence which indicates that he was able to grab onto anything to prevent the fall, or that the fall was in any way broken by anything, except the statement by one witness that Stewart's head first came in contact with a fellow employee's shoe before striking the concrete floor. The uncontradicted testimony is that such a fall could cause a skull fracture. After Stewart fell, he lay on the floor

without movement, his eyes became set and he was gasping for breath. There is no evidence indicating that he languished in pain after the fall. The uncontradicted medical testimony is that discoloration under the eyes should appear soon after the fall and such discoloration is evidence of hemorrhage, which in turn would be evidence of a fracture of the skull. In this case, there was no evidence that Stewart bled, and counsel for the employers rely upon this fact and the fact that discoloration did not become noticeable until about thirty minutes after the fall as being evidence indicating that there was not a skull fracture. We believe, under the testimony, that the arbitrator could properly conclude that, when a man fell over backwards with nothing to break his fall except the shoe of another workman and as a result the back of his head struck the concrete floor, after which he lay motionless with his eyes set and his face became discolored under the eyes and he died shortly thereafter, such death was caused by a skull fracture.

The medical testimony indicates that when one suffers a heart attack, he is more inclined to fall forward than backward, since the attack and the ensuing pain cause the individual to double up. While it is true that there is testimony in the record that the employee had been under a doctor's care for a heart condition at a time prior to this occurrence, there is also evidence in the record indicating that on this particular day the employee was in good health and that he had not complained of any ill-health for some time prior to this ocurrence.

The Industrial Commission determines the facts. It is within its sphere to draw reasonable inferences and conclusions from competent evidence, both direct and circumstantial. Where the commission has made a finding upon a contested question of fact, this court will not disturb such finding unless we can say that the conclusion reached is contrary to the manifest weight of the evidence. *Mandel Bros. Inc.* v. *Industrial Com.* 359 Ill. 405.

This court will not weigh conflicting evidence and substitute its judgment for that of the commission unless we can say that the finding of the commission is clearly and manifestly against the weight of the evidence. *Olin Industries, Inc.* v. *Industrial Com.* 394 Ill. 202.

The Industrial Commission may act on reasonable inferences arising from undisputed or established facts and such inferences do not lie within the realm of conjecture. Where the inferences drawn by the Industrial Commission are clear and reasonable, this court will follow the action of the Industrial Commission and this court will not discard permissible inferences drawn by the commission merely because it might have drawn other inferences from such facts. *Rosenfield* v. *Industrial Com.* 374 Ill. 176; *Crane Co.* v. *Industrial Com.* 378 Ill. 190.

In the case at bar, it was incumbent upon the applicant to prove that death arose out of the employment. It was not necessary in order for her to recover that she negative every possibility that death might have arisen other than out of the employment. The legitimate inferences to be drawn from this testimony and the other testimony in the record could reasonably justify the conclusion of the arbitrator that the deceased suffered a skull fracture from which he died and that the skull fracture arose out of his employment. For the reasons stated in this opinion, the judgment of the circuit court confirming the award of the Industrial Commission is affirmed.

*Judgment affirmed.*