(No. 39134.—

GUS T. HANDGE & SON PAINTING Co., Appellant, *vs.* THE
INDUSTRIAL COMMISSION *et al.*—(GLENNA M. McLANE
*et al.,* Appellees.)

*Opinion filed September 28, 1965.*

EARL S. HODGES, of Springfield, (SAMUEL C. PATTON,
of counsel,) for appellant.

PHILLIP C. ZIMMERLY, of Champaign, and MITCHEM,
HENDRIX & ALDEEN, of Urbana, (CHARLES W. HENDRIX,
of counsel,) for appellees.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

James R. McLane, employed by Gus T. Handge & Son Painting Co., a painting contractor working on a contract for painting a part of the interior of the new Illini Union Building at the University of Illinois in Urbana, became ill at work and died September 20, 1962. Glenna M. McLane, his widow, filed application on behalf of herself and five minor children for compensation under the Workmen's Compensation Act for his death. Applicant's theory was that the employee died from a ruptured aneurysm which arose out of and in the course of his employment. The employer defended, contending there was no fatal accidental injury which arose out of and in the course of the employment and that there was no proof of a causal connection between the death and the employment. The arbitrator found in favor of the employer and denied compensation. Additional testimony of Dr. Orville Thomas Bonnett was introduced on review by the Industrial Commission, which set aside the decision of the arbitrator and made an award of $61 per week for 286 weeks and $54 for one week, and the sum of $500 for burial expenses. Upon review in the circuit court of Douglas County, the award of the Commission was confirmed.

The employer now appeals to this court, contending (1) that there is no evidence that the employee sustained an accidental injury which arose out of and in the course of his employment, (2) that there is no causal connection between the employee's death and his employment, (3) that the medical witness was permitted to assume and decide facts not in the evidence, and (4) the award and judgment are contrary to the manifest weight of the evidence.

The record shows that James R. McLane was 37 years of age, married and with five children under 18 years of age. He appeared to be in good health and was big and

broad shouldered with the appearance of an athlete. There was no evidence of prior injury or disease to his heart or arteries.

On the date of his death, he started working at 7:30 A.M. and painted door jambs, which were of a height of approximately 7 feet. He finished this work and about mid-morning was assigned by his supervisor to paint bathroom ceilings. He was the only one assigned to paint these ceilings.

His fellow employees testified that he joined them in a coffee break about a half hour before he was later discovered to be ill. He was happy and joking at the coffee break. After the coffee break they each returned to their respective work areas and McLane was then assigned to paint ceilings. Ten minutes after the end of the coffee break, McLane complained to his supervisor that he was ill. A number of people saw him at this point and stated that he was pale, gasping for breath, perspiring freely, and that he appeared to be in a convulsion. He was taken to emergency at Carle Hospital by ambulance. There, Dr. Harlan Failor, a specialist in internal medicine, tended to him, but he died within ten minutes after his arrival at the hospital.

Dr. Failor testified that McLane was pale and sweaty with a pulse that was weak but of fairly good quality when he first saw McLane. In about two minutes, he was convulsing, his respirations became weak, his pulse became fast and erratic, and he became bluish or cyanotic from his neck up. He expired in a matter of two or three minutes. Dr. Failor stated that he had a clinical impression that McLane had a rupture of some large blood vessel adjacent to the heart, most likely the aorta, which condition is called an aneurysm. The doctor further testified that an aneurysm can be accelerated by exertion or vigorous action, and that the actual rupturing is more liable to occur at times of unusual physical stress. He also testified that susceptibility to an

aneurysm is either developmental or something for which a person is born with a tendency. No post-mortem or autopsy was performed.

Dr. G. V. Fishel of Arcola testified he had been the McLane family physician for some 35 years, had treated McLane but had never given him any advice with reference to his heart or circulation. He stated that so far as he knew, McLane was in good health.

On review before the Commission, Dr. Orville Bonnett was called as a witness by petitioner. He was asked a hypothetical question wherein he was asked to assume the matters in evidence concerning McLane, his age, physical condition, employment, the assignment given him, his condition after becoming sick and the findings of Dr. Failor, together with Dr. Failor's impression as to the cause of death. He then was asked whether based upon these assumed facts he had an opinion based upon a reasonable degree of medical certainty as to whether or not there might or could be a causal connection between the condition that caused the hypothetical man's death and his employment on that morning. Dr. Bonnett stated he had an opinion which was that there could be a causal connection. He also stated that the reason for his opinion was that a person engaged in activity which will increase the inner abdominal pressure such as stooping, straining and reaching, where the vocal chords are closed and the diaphragm fixed, would cause a raising of blood pressure which would contribute to the immediate rupture of the aneurysm. He further said he did not predicate this answer on some unusual happening in the course of employment.

The question of whether death from a heart attack or similar heart failure or occurrence is compensable has been given thorough consideration by this court. In *Republic Steel Corp.* v. *Industrial Com.* 26 Ill.2d 32, we considered many of the cases involving this question. We there held that there must be proof of a causal connection between

some phase of the employment and resulting disability or death. But as we there said in approving the language of *Clifford-Jacobs Forging Co.* v. *Industrial Com.* 19 Ill.2d 236, "It is not necessary that an employee receive some external violence for the injury to be accidental within the meaning of the Workmen's Compensation Act. * * * If a workman's existing physical structure gives way under the stress of his labor, his death is an accident which arises out of his employment."

As said in the *Republic Steel* case: "To come within the statute the employee must prove that some act or phase of the employment was a causative factor in the ensuing injury. He need not prove it was the sole causative factor nor even that it was the principal causative factor, but only that it was *a* causative factor in the resulting injury."

It is not the function of this court to weigh the evidence or to determine the facts. That is the function of the Industrial Commission, which may draw reasonable inferences and conclusions from competent evidence, direct or circumstantial. We will not substitute our judgment on the evidence for that of the Commission. Our function is to determine whether the finding of the Commission is against the manifest weight of the evidence.

Respondent attempts to distinguish this case from other heart cases previously considered by this court where awards have been sustained on the ground that in such other cases the heart attack was preceded by trauma, exertion or emotional involvement. We never have limited recovery to those workmen who lift exceedingly heavy things or who work under intense heat. The rule applies to all workmen alike. If a workman's existing physical structure gives way under the stress of his usual labor, his death is an accident which arises out of his employment.

The evidence supports a reasonable inference that Mc-Lane was painting at his assigned work on the morning in question at the time he became ill. It is logical to infer that

he had some physical stress occasioned by his work when he became ill, and there is medical testimony by Dr. Failor that it was his clinical impression that McLane suffered an aneurysm which normally ruptures under physical stress.

There was sufficient competent evidence in this record from which the Commission could draw the inference and conclusion that this death resulted from an accidental injury arising out of the employment. We cannot say that it was clearly against the manifest weight of the evidence.

Nor do we find any error in the hypothetical question put to Dr. Bonnett which assumed existence of an aneurysm and that McLane was performing activity which could cause a ruptured aneurysm. The record shows that every assumption included had a basis in the evidence. The doctor did not attempt to decide what the facts were, but made an answer to the question placed assuming the facts submitted to be true. This is all that could have been asked in view of the contentions of the parties as to the controverted facts. In presenting evidence by hypothetical question, counsel propounding the question has a right to ask it assuming the elements he claims appear in the evidence. *Holmes and Brothers, Inc.* v. *Industrial Com.* 391 Ill. 277; *Olofsson* v. *Wood,* 23 Ill. App. 2d 32.

As we said in *Clifford-Jacobs Forging Co.:* "So long as the witness is not called upon to decide any controverted fact, but is asked to assume the truth of the facts testified to, he may give his opinion thereon in any form. The objection, if any, should be a specific one directed to that which might improperly be incorporated or deleted from the hypothetical question." The employer here makes specific objections to the inclusion of controverted facts, but as long as these assumptions were within the realm of the direct or circumstantial evidence as shown by the facts or reasonable inferences, the question was proper. In our opinion, the assumptions here were proper in view of the evidence.

For the reasons herein stated, the judgment of the circuit court confirming the award of the Industrial Commission is affirmed.

*Judgment affirmed.*