(No. 42300.—

The City of Chicago, Appellant, *vs.* The Industrial Commission *et al.*—(Catherine Coughlin, Appellee.)

*Opinion filed May 20, 1970.*

Raymond F. Simon, Corporation Counsel, of Chicago, (Marvin E. Aspen and Marsile J. Hughes, Assistants Corporation Counsel, of counsel,) for appellant.

Herbert D. Jones, Jr. and Thomas W. Burke, both of Chicago, (Richard W. Huszagh, of counsel,) for appellee.

Mr. Justice Kluczynski delivered the opinion of the court:

In January, 1961, petitioner, Catherine Coughlin, filed an application for adjustment of claim with the Industrial Commission to recover for the death of her husband, an employee of the City of Chicago. An arbitrator found that

petitioner had failed to prove that John Coughlin, 77 years old, sustained injuries arising out of and in the course of employment. The Commission reversed the arbitrator and granted an award of $12,150. The circuit court of Cook county confirmed the decision of the Commission and this direct appeal followed. The only issue before this court is whether the decision of the Industrial Commission is against the manifest weight of the evidence.

On January 3, 1960, John Coughlin, a bridge tender, began the day's work for the City at 8:00 A.M. Peter Vitullo, decedent's relief man, arrived at the bridge house at approximately 3:00 P.M., went to the basement and found the decedent's body lying on its back near a sink. There was an empty galvanized bucket "lying on its side" to the right of the body. No autopsy was performed and no direct evidence adduced proving the cause of death.

The bridge house where decedent worked consisted of three floors: the basement, the main floor and the operating room. The bridge tender spends most of his time on the third floor in the operating room which contains the control levers. In the basement, there was a small hot water heater used to heat the bridge house and near the heater was a supply of coal for fuel. The pail in the basement was used for washing and also was filled with water and placed on the hot water heater to humidify the bridge house. The duties of a bridge tender included the operation of the bridge and also involved maintenance chores, *i.e.*, washing the windows, mopping the floor and other cleaning duties.

Dr. James Giganti and Dr. Max Bernstein, practicing physicians specializing in internal medicine testified at the arbitrator's hearing. Neither physician had examined decedent-employee before or after his death.

In response to a hypothetical question, Dr. Giganti, an expert for the City, testified that there was no causal relationship between the activities of the hypothetical person and his death, and that age was a significant factor in the

cause of death. He further testified that there was no information indicating coronary thrombosis, and that he did not automatically regard sudden death as due to coronary thrombosis.

Dr. Max Bernstein, an expert for the petitioner, testified that in his opinion deceased had a coronary episode with myocardial infarction causing death. He testified that a man of the age of 77 years would have some hardening of the arteries and a narrowing of the coronary artery as part of the ageing process and that with short episodes of exertion, the coronary artery would not supply sufficient amounts of oxygen to the heart. The heart then would suffer from lack of oxygen and would beat irregularly and not supply circulation to the rest of the body. This would lead to death as a result of the deterioration of a certain section of the heart tissue or myocardial infarction.

The respondent argues specifically that a causal connection between decedent's employment and his death was not shown by substantial evidence. In *Republic Steel Corp.* v. *Industrial Com.,* 26 Ill.2d 32, 45, this court discussed certain requirements of heart-attack cases: "We have not heretofore held, and do not now hold that because a heart attack occurs at work, it is automatically compensable. To come within the statute the employee must prove that some act or phase of the employment was a causative factor in the ensuing injury. He need not prove it was the sole causative factor nor even that it was the principal causative factor, but only that it was *a* causative factor in the resulting injury." However, if one's heart has deteriorated to such an extent that any exertion becomes an over-exertion, it is not sufficient to merely show that the employee has engaged in some job-connected physical activity prior to his attack. (*Illinois Bell Telephone Co.* v. *Industrial Com.,* 35 Ill.2d 474.) The burden was on the claimant to show that certain activities incidental to employment

were performed by the employee, that these activities were of a character to expose the employee to a greater risk of injury than if he had not been so employed, and that there was a causal connection between the activities and the death of the employee. There was testimony by claimant and the bridge tender who relieved decedent, as to the usual duties performed by decedent in his employment. There was also testimony that decedent's body was lying on its back and that there was a pail overturned next to decedent's body. Dr. Bernstein's opinion was that "the particular tasks that he was doing just before he died undoubtedly triggered the mechanism that pushed him over the edge." On cross-examination the doctor admitted that it was impossible to say what minimum exertion was necessary to cause the fatality, because this would depend entirely on the caliber of the vessel supply to the heart. Although there was no eyewitness to any activities actually performed, there was circumstantial evidence as to activities performed by decedent and medical testimony as to the risk involved in performing these activities. (See *Bruno* v. *Industrial Com.,* 31 Ill.2d 447.) Considering the decedent's medical history, the usual activities incidental to employment, the suddenness of death, and the circumstances under which the body was found, it was not unreasonable for the Commission to conclude that death arose out of employment. "The Industrial Commission determines the facts. It is within its sphere to draw reasonable inferences and conclusions from competent evidence, both direct and circumstantial." (*Clifford-Jacobs Forging Co.* v. *Industrial Com.,* 19 Ill.2d 236 at 245.) Although there was a conflict in medical testimony, this court will not weigh conflicting evidence and substitute its judgment for that of the Commission. The function of this court is to determine whether the finding of the Commission is against the manifest weight of the evidence. (*Fluor Corp* v. *Industrial Com.,* 398 Ill. 616.) After a careful review of the

record, we find that there was sufficient evidence on each element of proof and that any impropriety in the examination of Dr. Bernstein was cured on cross-examination.

The judgment of the circuit court of Cook County affirming the award of the Industrial Commission is affirmed.

*Judgment affirmed.*