(No. 48255.—

ELMER PERRY, Appellant, v. THE INDUSTRIAL COMMISSION *et al.*—(LTD., Inc., Appellee.)

*Opinion filed April 5, 1977.—Rehearing denied May 26, 1977.*

Richard S. Cohan, of Chicago (Sidney Z. Karasik, of counsel), for appellant.

Discipio & DeCarlo, of Chicago (Vito D. DeCarlo, of counsel), for appellee.

MR. CHIEF JUSTICE WARD delivered the opinion of the court:

The claimant, Elmer Perry, has appealed under our Rule 302(a) (58 Ill. 2d R. 302(a)) from a judgment of the circuit court of Cook County which confirmed the Industrial Commission's decision denying his claim under the Workmen's Compensation Act (Ill. Rev. Stat. 1967, ch. 48, par. 138.1 *et seq.*). An arbitrator for the Commission found that the claimant had sustained accidental injuries while working for the respondent, LTD., Inc., but that he had failed to prove that he had incurred any disability from these injuries that would entitle him to an award. The Commission affirmed these findings.

The respondent employed the claimant as a truck driver. While the claimant and another employee were driving one of the respondent's trucks to Arkansas, they stopped to eat in Staunton, Illinois. After the claimant alighted from the truck, he proceeded "to check the air" in the tires by kicking the tires with his right foot. He experienced a sharp pain in his right foot immediately

after doing so. The pain continued for several days, and the fourth toe on his right foot became swollen and discolored. At the Roosevelt Memorial Hospital in Chicago his fourth right toe was found to be gangrenous, and it was removed. A second operation was performed, and during this operation the remaining toes on the right foot were removed except for his great right toe. Because of a failure in the healing process, a third operation was performed to remove the right leg to a point six inches below the knee. Subsequent operations were performed on the right leg over the next three years. In the final surgery the leg was amputated to a point four inches above the knee.

The parties agree that the claimant suffered from Buerger's disease prior to the tire-kicking incident. They also agree that the several operations on the claimant's right leg were necessitated by the disease.

Dr. Pascual Sales, who was a resident in training for general surgery, was a witness for the claimant. He testified that he was a member of the surgical team that had performed the later operations on the claimant's leg. He said that Buerger's disease restricts the flow of blood through the arteries and that this restriction could eventually cut off the flow of blood and cause a member, such as a toe, to become gangrenous. It was his opinion that a slight bruise or bump could aggravate and accelerate the disease in the area where the bruise or bump was received. In response to a hypothetical question, Dr. Sales gave an opinion that there was a causal connection between the injury the claimant suffered, when he kicked the tire, and the requirement of the subsequent multiple operations which resulted in the partial amputations of the leg.

Dr. Leonard R. Smith, an orthopedic surgeon who was a witness for the respondent, testified that he examined the claimant after his fourth right toe had been amputated and that he had performed the operations which resulted in the amputation to a point six inches below the knee. He gave his opinion that the bumping of the foot would not

have been enough to aggravate the disease but that a fracture or dislocation could have done so. He stated that Buerger's disease causes a narrowing of the blood vessel so that eventually no blood can pass through the vessel and that a substantial injury could accelerate this stage of the disease. On cross-examination he said that it would require a fracture or a substantial trauma to aggravate and accelerate the disease and said again that the tire-kicking incident would not be sufficient.

The arbitrator found that the claimant had suffered accidental injuries in the course of his employment but that he had failed to prove that he had sustained any disability because of these injuries. In a hearing before the Commission the claimant presented the testimony of Dr. David R. Abramson, a specialist in peripheral vascular diseases, that is, those which affect the blood vessels of the arms and legs. He testified that a very mild trauma could aggravate and accelerate the disease and that in most cases some type of trauma to the skin is necessary to cause a member to become gangrenous. He was of the opinion, responding to a hypothetical question, that the trauma of the kind here could aggravate and accelerate the disease.

It is clear that where there is conflicting medical evidence as to the causation of an injury the Industrial Commission has the primary responsibility of deciding this question. Its determination will not be set aside unless it was contrary to the manifest weight of the evidence. (*Illinois Institute of Technology v. Industrial Com.* (1975), 60 Ill. 2d 64.) This court considered a question resembling the one here in *Quaker Oats Co. v. Industrial Com.* (1953), 414 Ill. 326. The claimant operated a machine which filled cardboard boxes with 48 one-pound cans of dog food. The machine malfunctioned on numerous occasions in the period from July to December of 1949, causing cans to drop on the claimant's foot. There was a diagnosis that claimant had Buerger's disease, and he was hospitalized in January of 1950. Eventually his foot was amputated to a

point just below his knee.

The arbitrator's award to the claimant was affirmed by the Commission. The circuit court reversed the Commission's decision. A question reviewed was whether the claimant had proved "the causative relation between the alleged injury and the aggravation and acceleration of the pre-existing disease." (414 Ill. 326, 330.) On the question of conflicting medical testimony, this court said:

> "The evidence here as to whether repeated blows on the foot of one suffering from Buerger's disease constitutes injury is conflicting, and, after analyzing it, we cannot say that the finding of the Industrial Commission is against the manifest weight of that evidence. It is not the province of this court to undertake to determine where the preponderance of the evidence lies, or which medical experts are more worthy of belief, and we will not substitute our judgment for that of the commission unless we can say that its finding is clearly manifestly against the weight of the evidence. [Citations.]" 414 Ill. 326, 335.

This statement is applicable here. Conflicting medical evidence was presented here on the question of whether the tire-kicking incident was sufficient to aggravate and accelerate the pre-existing condition. The Commission had the responsibility "to determine which testimony it will prefer and accept [citations], and a court will not disturb the finding unless it is contrary to the manifest weight of the evidence [citations]." (*Pathfinder Co. v. Industrial Com.* (1976), 62 Ill. 2d 556, 567-68.) The Commission is primarily the finder of fact, and we cannot say on the record here that its finding was contrary to the manifest weight of the evidence. The judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*