(No. 48965.—)

THE COUNTY OF COOK, Appellant, v. THE INDUS-
TRIAL COMMISSION *et al.*—(Rosalie Rogers, Appel-
lee.)

*Opinion filed October 5, 1977.*

DOOLEY and GOLDENHERSH, JJ., dissenting.

Bernard Carey, State's Attorney, of Chicago (Paul P. Biebel, Jr., Deputy State's Attorney, and Leonard N. Foster, Assistant State's Attorney, of counsel), for appellant.

John W. Turner, of Chicago, and Goldstein, Goldberg, and Fishman, of Chicago, for appellee.

MR. JUSTICE RYAN delivered the opinion of the court:

This workmen's compensation claim was brought by Rosalie Rogers against the County of Cook for compensation for an injury allegedly arising out of her employment in the Cook County recorder's office. On February 8, 1971, she suffered a stroke as she was arising from her desk to go to lunch. The arbitrator denied compensation; however, the Industrial Commission awarded compensation and the circuit court of Cook County confirmed the decision of the Commission. The county appeals directly to this court under our Rule 302(a) (58 Ill. 2d R. 302(a)). The sole question on this appeal is whether the disability resulting from the stroke arose out of and in the course of the plaintiff's employment.

On February 8, 1971, the date of the incident in question, Rosalie Rogers was 50 years old. She had been employed in the office of the recorder of deeds in Cook County for about one year. For 10 years prior to this employment, she had been a housewife. The record does not reflect any other employment. For more than 10 years she had suffered from hypertension. She testified that she had been hospitalized for two weeks in 1960 because of her high blood pressure and again in 1965 she was hospitalized for three weeks for the same cause. She had been under the care of Dr. Arthur Savitt since 1964. Dr. Savitt testified that in 1965 her blood pressure ranged from between 210/140 and 170/120. The doctor further testified that a normal reading for a woman her age would be 140/90. On June 18, 1970, her blood pressure reading was 220/160; on January 8, 1971, 220/148; and on January 28, 1971, 204/130.

For the first six months that she worked in the recorder's office her duties were "writing up sheets for the binders and the books." Later she did "searches" which involved handling large books that weighed approximately

35 pounds. She began to feel dizzy, tired and exhausted at the end of the day and, about three weeks before the incident in question, she went to see Dr. Savitt. She continued to work until January 29, 1971. During that last week of work she had seen her doctor twice. He advised her to stay home and rest and increased her medication. She remained home from work for one week.

She returned to work on Monday morning, February 8, 1971. At about 11:45 a.m. as she prepared to go to lunch, she pushed her chair back from her desk and started to get up from a sitting position. While bent over in a stooped position, she felt dizzy and "it seemed like something heavy hit me on top of my head." She temporarily lost consciousness and fell over on an adjacent desk. The county nurse was called, and the claimant was taken to Henrotin Hospital, where it was determined that she had an aneurysm of the right cerebral artery with a cerebral hemorrhage resulting in some paralysis which is now considered permanent.

The claimant was the only witness to testify before the arbitrator; however, her hospital records were admitted into evidence. The county introduced into evidence a report of Dr. Steinberg, who stated that in his opinion there was no causal connection between the occupational duties that Mrs. Rogers performed as a clerk in the recorder's office and her stroke and disability. The arbitrator found that the claimant had failed to prove that she had sustained accidental injuries arising out of and in the course of her employment.

On review before the Industrial Commission the claimant offered the testimony of Dr. Savitt, who had been her physician from 1964 to February 8, 1971. Following his testimony concerning her hypertension over a period of years, he testified concerning causal connection in response to a hypothetical question. The hypothetical question actually asks for three separate opinions which

relate to causal connection between (1) the condition of ill-being and the episode the hypothetical person had, as described on February 8, 1971, or (2) if that condition might or could be connected with the hypothetical person's work activities in the last week of work involving the lifting of books, and (3) "whether or not there might be a causal connection between either the lifting or the getting up from the desk and the pushing of the chair out from under the desk in the semi-stooped position." In response to this multiple question, including the either/or disjunctive question listed as No. 3, the doctor answered simply "I think there might be a connection" without specifying to which part or parts he was responding. When asked to state the basis of his opinion his answer indicated that in his opinion the increased pressure in the brain caused by the getting up from the chair and being in a stooped position could have been the precipitating factor in causing the aneurysm to rupture. He was then asked what significance "might be attached" to the work activity the last week in January 1971, including the lifting of the heavy books. Dr. Savitt replied "I *think* every time this person lifted a heavy object it *tended* to increase the pressure in the brain and with the background of hypertension, *I would think* that every additional increase in the pressure in the brain *might tend* to weaken the aneurysm to the point where it ruptured." (Emphasis added.)

It is well established that an employee is entitled to recover for all the consequences of an aggravation to a preexisting condition and where one sustains an accidental injury which aggravates a diseased condition, or where, in the performance of his duties and as a result thereof, he is suddenly disabled, an accidental injury is sustained even though the result would not have obtained had he been in normal health. The accident need not be the sole cause or even the principal cause of the disability. The employee must only prove that it was *a* causative factor. *Leason v.*

*Industrial Com.* (1973), 55 Ill. 2d 486; *Gus T. Handge & Son Printing Co. v. Industrial Com.* (1965), 33 Ill. 2d 201.

It is also well established that it is within the province of the Industrial Commission to determine disputed questions of fact, to draw inferences from the evidence and to resolve questions of causal relationship based upon conflicting medical testimony and that a reviewing court will not disturb the finding of the Industrial Commission unless against the manifest weight of the evidence. *Illinois Institute of Technology v. Industrial Com.* (1975), 60 Ill. 2d 64; *Lewandowski v. Industrial Com.* (1969), 44 Ill. 2d 204.

However, the claimant has the burden of proving that his injury arose out of and in the course of his employment, and it is the duty of the court on review to examine the record and determine whether the finding of the Industrial Commission is supported by the evidence. If the finding of the Commission that the claimant's condition arose out of his employment is not supported by the evidence in the record the award must be set aside. Liability under the Act cannot rest upon imagination, speculation or conjecture, but must be based solely upon the facts contained in the record. *Schroeder Iron Works v. Industrial Com.* (1967), 36 Ill. 2d 519; *A. O. Smith Corp. v. Industrial Com.* (1965), 33 Ill. 2d 510.

Considering the testimony of Dr. Savitt and his reponse to the hypothetical question, it would appear from his comment when he stated the basis for his opinion that "there might be a connection" that he was referring to the increased pressure in the brain caused by the effort expended in getting up from the chair and from being in a stooped position. With regard to the work activities during the last week of work, including the lifting of the heavy books, it is plain that his testimony in that regard did not rise to the level of an assertion based upon a reasonable degree of medical certainty. From the words italicized in

the quoted testimony above, one can only conclude that the doctor was speculating or conjecturing what could have been the effect of the lifting of the books. He was testifying as to no more than mere possibilities, which is not sufficient under the Act to establish a connection between the employment activities and the claimant's condition (*Sanitary District v. Industrial Com.* (1931), 343 Ill. 236). It should also be noted that the question which evoked the quoted response from the doctor did not request that the answer be based upon a reasonable degree of medical certainty but only asked what significance "might be attached" to the work activity.

Assuming, as we shall, that the Industrial Commission rejected Dr. Steinberg's statement that there was no causal connection between claimant's work and her injury and accepted Dr. Savitt's testimony, the evidence in the record establishes no more than that there was a causal connection between claimant's getting up from the chair and the rupture of her aneurysm.

On cross-examination Dr. Savitt said that if a person for many years never had a diastolic pressure of under 120 that would "exacerbate this aneurysm"; that the process of bending down and getting up increases the pressure in the brain; that pressure would be increased by bending over and putting on shoes and stockings, getting in or out of bed, or any bending over below the level of the heart; and that high blood pressure alone over a period of years could eventually result in an aneurysm rupture.

Every employee whose disease or preexisting condition disables him while at work is not automatically entitled to a recovery under the Workmen's Compensation Act. In *Carson-Payson Co v. Industrial Com.* (1930), 340 Ill. 632, 639, this court said, quoting from Lord Chancellor Loreburn's opinion in *Hughes v. Clover, Clayton & Co.* (1910), 102 L.T.R. 340, 342, *aff'g* (1909) 2 K.B. 798, 101 L.T.R. 475:

" '*** In each case the arbitrator ought to consider whether, in substance, as far as he can judge on such a matter, the accident came from the disease alone, so that, whatever the man had been doing, it would probably have come all the same, or whether the employment contributed to it. In other words, did he die from the disease alone, or from the disease and employment taken together, looking at it broadly. ***' "

In *Illinois Bell Telephone Co. v. Industrial Com.* (1966), 35 Ill. 2d 474, the circuit court of Cook County had confirmed an award of the Industrial Commission for the death of an employee who had died as a result of the heart attack. He had previously had a heart attack which had left him with a seriously damaged heart which limited his activities. This court held that the employee's death did not arise from his employment but from the natural risk to which all persons with his disability are exposed. This court stated: "It [the accidental injury] must be of such character that it may be seen to have had its origin in the nature of, or have been incidental to, the employment, or it must have been the result of a risk to which, by reason of the employment, the injured employee was exposed to a greater degree than if he had not been so employed." 35 Ill. 2d 474, 477.

In *City of Chicago v. Industrial Com.* (1970), 45 Ill. 2d 350, 352-53, this court stated:

"The burden was on the claimant to show that certain activities incidental to employment were performed by the employee, that these activities were of a character to expose the employee to a greater risk of injury than if he had not been so employed, and that there was a causal connection between the activities and the death of the employee."

(See also *Board of Trustees v. Industrial Com.* (1969), 44

Ill. 2d 207.) Also in *City of Chicago,* this court stated:

"However, if one's heart has deteriorated to such an extent that any exertion becomes an over-exertion, it is not sufficient to merely show that the employee has engaged in some job-connected physical activity prior to his attack." 45 Ill. 2d 350, 352.

The work-connected activity (getting up from the chair) which Dr. Savitt testified precipitated claimant's injury subjected her to no greater risk than did many of the normal daily activities which Dr. Savitt testified would also increase the pressure in the brain. It is apparent that her condition had deteriorated to such an extent that any activity could have triggered the disabling episode. The mere fact that she was at work or even engaged in some job-related activity when the episode occurred is not sufficient to support an award.

Claimant had testified that she lived in an apartment on the third floor of a building; that she customarily walked down the steps; that she had to walk upstairs to catch a train to go to work; that she walked to the train; that she cleaned her apartment on weekends; and that she did her own housework, including using the vacuum cleaner. Clearly activities in which she engaged around her home were at least as strenuous as those she engaged in at work, particularly the precipitating cause of the rupture of the aneurysm. Nothing in this case shows that she would not have been equally exposed to the danger of this episode entirely apart from her employment. *Illinois Bell Telephone Co. v. Industrial Com.* (1966), 35 Ill. 2d 474, 477.

Claimant relies upon this court's recent decision in *Illinois Institute of Technology v. Industrial Com.* (1975), 60 Ill. 2d 64. The resemblance between the two cases is quite superficial. The only similarity is that both cases involve a ruptured aneurysm. In *Illinois Institute of*

*Technology,* the employee had no history of high blood pressure or of any other disease, which completely distinguishes that case. Also, in that case the medical testimony for the claimant related the entire range of the employee's work activities over a period of time, not just one final precipitating episode, to the rupture of the aneurysm. We do not find *Illinois Institute of Technology* helpful in this case.

For the reasons stated herein we find that the decision of the Industrial Commission is contrary to the manifest weight of the evidence. The judgment of the circuit court of Cook County is therefore reversed, and the award of the Industrial Commission is set aside.

*Judgment reversed;*
*award set aside.*

MR. JUSTICE DOOLEY, dissenting:

I would affirm the award of the Industrial Commission.

Dr. Savitt, in response to a hypothetical question, was asked "whether or not there might be a causal connection between either the lifting [of the 35-pound tract books] or the getting up from the desk and the pushing of the chair out from under the desk in the semi-stooped position" and the claimant's accident. The doctor responded, "I think there might be a connection." There was no objection to this testimony.

The majority, in treating this testimony, states: "In response to this multiple question, including the either/or disjunctive question listed as No. 3, the doctor answered simply 'I think there might be a connection' without specifying to which part or parts he was responding." And continuing its microscopic criticism notes: "It should also be noted that the question which evoked the quoted response from the doctor did not request that the answer be based upon a reasonable degree of medical certainty."

But such considerations omit a very important fact, the absence of any objection. It cannot be urged here that it is not clear what "part" of the question the witness was responding to or that the testimony is not based upon "a reasonable degree of medical certainty." Any such complaints could have been raised by objection at the time the evidence was offered. Such objection would have provided the examiner the opportunity to amend the form of the question. This is the very purpose of an objection. See *People v. Trefonas* (1956), 9 Ill. 2d 92, 98.

When evidence is received without objection, as it was here, no impropriety as to its form can be considered. But even more than that, this evidence must be given its natural probative value. In *Ascher Bros. Amusement Enterprises v. Industrial Com.* (1924), 311 Ill. 258, 261, it was observed: "These statements were hearsay and incompetent, but being received without objection they are to be considered and given their natural probative effect as if they were in law admissible."

On this review we must, under the law, treat this case as if the doctor had expressed an opinion upon a reasonable degree of medical certainty that petitioner's condition of ill-being might be causally related to lifting a 35-pound tract book. Such being the case, the issue was one of fact for the Industrial Commission with which this court has steadfastly refused to interfere. *Atlantic & Pacific Tea Co. v. Industrial Com.* (1977), 67 Ill. 2d 137; *Perry v. Industrial Com.* (1977), 66 Ill. 2d 418; *Abbey Labor Service, Inc. v. Industrial Com.* (1977), 66 Ill. 2d 213; *Illinois Valley Irrigation, Inc. v. Industrial Com.* (1977), 66 Ill. 2d 234; *Owens-Corning Fiberglass v. Industrial Com.* (1977), 66 Ill. 2d 247; *Rolla v. Industrial Com.* (1977), 66 Ill. 2d 351; *Sahara Coal Co. v. Industrial Com.* (1977), 66 Ill. 2d 353.

Dr. Savitt further noted, as the majority points out, when "asked what significance 'might be attached' to the

work activity the last week in January 1971, including the lifting of the heavy books," that " 'I *think* every time this person lifted a heavy object it *tended* to increase the pressure in the brain and with the background of hypertension, *I would think* that every additional increase in the pressure in the brain *might tend* to weaken the aneurysm to the point where it ruptured.' (Emphasis added.)" This makes clear that it was the doctor's opinion that lifting heavy objects tended to increase the pressure in petitioner's brain, and that because of her preexisting physical condition such additional increase in pressure would have a tendency to weaken the aneurysm. But the majority's treatment of his testimony would seem to be inconsistent with the well-established law recognized by it (68 Ill. 2d at 29-30), that all the employee must prove was that the accident was a causative factor in bringing about the injury, and that recovery may be had for an aggravation of a disease condition.

Apart from an improper evaluation of Dr. Savitt's testimony, the majority's conclusion is inconsistent with other decisions of this court. It has been consistently held that recovery may be had for an exacerbation of preexisting conditions such as chronic heart disease or rupture of a congenital aneurysm, so long as the exacerbation or rupture is work-associated, even though the onset takes place away from work.

In *Cossident v. Industrial Com.* (1974), 57 Ill. 2d 33, an employee called to a part of the plant, from two to four city blocks away, ran the distance. He experienced pain in his left arm, chest and dizziness. He was later hospitalized for acute myocardial infarction. The doctor that testified on claimant's behalf stated that he suffered from a coronary insufficiency which probably preexisted the incident and could have been aggravated by any moderate strain. The Industrial Commission found there was no causal relationship between the claimant's employment

and the heart attack. Yet this court reversed such findings as contrary to the manifest weight of the evidence, and remanded the cause to the Industrial Commission for the entry of a proper award.

In *Illinois Valley Irrigation, Inc. v. Industrial Com.* (1977), 66 Ill. 2d 234, claimant unloaded iron pipes from a company truck at a job site, and then left to play golf. After his golf game, he complained of not feeling well and slept in a chair that night because of "indigestion." During the next two days at the job site he experienced the same pain. On the second night, after admission to the hospital, the diagnosis was heart disease of an unknown cause manifested by congestive heart failure. He performed office and clerical work after these incidents until his death two months later, while announcing a Little League baseball game. An award of compensation was affirmed.

The only difference that can be said to exist between the medical testimony in *Illinois Irrigation* and here is that in *Illinois Irrigation* its form was better—a meaningless circumstance where there is, as here, no objection.

In *Gus T. Handge & Son Painting Co. v. Industrial Com.* (1965), 33 Ill. 2d 201, a painter, 10 minutes after a coffee break, complained of illness. He appeared to be pale, gasping for breath, and perspiring profusely. He died shortly after being taken to the hospital, and the diagnosis was the rupture of a blood vessel adjacent to the heart, an aneurysm. This is a developmental or congenital condition. The evidence was that an aneurysm could be accelerated by exertion and that the actual rupturing is more likely to occur in times of unusual physical strain. There was no evidence that any medical witness predicated his opinion on some unusual happening in the course of claimant's employment. In sustaining an award, this court noted:

> "Respondent attempts to distinguish this case from other heart cases previously considered by this court where awards have been sustained

on the ground that in such other cases the heart attack was preceded by trauma, exertion or emotional involvement. *We never have limited recovery to those workmen who lift exceedingly heavy things or who work under intense heat. The rule applies to all workmen alike. If a workman's existing physical structure gives way under the stress of his usual labor, his death is an accident which arises out of his employment.*" (Emphasis added.) (33 Ill. 2d 201, 205.)

See also *Wirth v. Industrial Com.* (1974), 57 Ill. 2d 475; *Guardian Electric Manufacturing Co. v. Industrial Com.* (1973), 53 Ill. 2d 530.

We cannot, consistent with prior decisions, set aside the award of the Commission in favor of Rosalie Rogers. Worse yet, future cases will be determined according to the decisions we have alluded to. This will, of course, aggravate the injustice done this petitioner today.

MR. JUSTICE GOLDENHERSH joins in this dissent.