(No. 46925 )

C.S.T. ERECTION COMPANY, Appellee, v. THE INDUSTRIAL COMMISSION *et al.*—(Reginald Cyrus, Appellant.)

*Opinion filed September 26, 1975.*

Robert M. Salzman, and Pfeffer, Becker & Gabric, of Chicago, for appellant.

Kane, Doy & Harrington, of Chicago (Arthur O. Kane and Samuel J. Doy, of counsel), for appellee.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court:

Claimant, Reginald Cyrus, sought workmen's compensation for injuries arising out of and in the course of his employment with C.S.T. Erection Company (hereafter employer). In addition to an award for total temporary incapacity which is not contested, the arbitrator entered an award for 150 weeks at $59 per week for claimant's permanent and complete loss of vision of his left eye due to diplopia (double vision). The Industrial Commission confirmed this award and, in addition, entered an award for 60 weeks at the aforesaid amount for a skull fracture sustained by claimant. On *certiorari* to the circuit court of Cook County the Commission's decision was set aside and the arbitrator's decision affirmed. Claimant has appealed to this court (50 Ill.2d R. 302(a)) contending that the

circuit court improperly reversed the award for his skull fracture. The employer has cross-appealed urging that the determination as to the extent of loss of use of the left eye is contrary to the manifest weight of the evidence.

Claimant worked as a construction laborer. While performing his duties in October 1969, he fell 20 feet from a roof, landing on his buttocks and then striking his head. He was taken to a hospital where X rays revealed that he had sustained two skull fractures. One fracture was through the "squamous portion of the temporal bone extending to the base of the skull." Another fracture line was disclosed in the left parietal region. Prior to his release claimant said that he experienced blurred or double vision. Claimant went home for several days but was admitted to another hospital where surgery was performed to remove a chronic extradural hematoma (bloodclot) that was discovered near the left anterior portion of the skull.

Upon his release claimant moved to California where he resided with his family. He consulted several physicians including an ophthalmologist because he said that he had experienced double vision. While in California, he worked briefly at two jobs and attended school for a short time. He explained that while attending school he had difficulty in reading. Claimant testified before the arbitrator that he presently experienced double vision if he looked at an object from a certain angle and that he found it difficult to walk down a stairway because he would miss a stair and fall. He further complained about periods of dizziness. It was established that claimant was nearsighted prior to the accident in question.

Dr. Burton Russman, an ophthalmologist, examined claimant 2 years after the accident. He administered a red glass test which involved moving the glass over each eye, positioning it with a light source and evaluating the responses as to what the patient saw. He testified that the complexity of the test made it unlikely that a patient could consistently give answers which would lead to an

erroneous diagnosis. As a result of this examination, Dr. Russman was of the opinion that claimant had permanent double vision in the lateral gaze. He said that both eyes were utilized in creating the double vision, and that by closing either eye the problem of diplopia could be obviated. He concluded that a skull fracture could in whole or in part give rise to such a condition, although an injury to the brain that would be entirely separate from the skull fracture could also bring about this result.

Dr. I. Joshua Spiegel, a neurosurgeon, had treated claimant shortly after his accident. He examined claimant and determined claimant's optic nerves had become swollen and there was hemorrhaging in the retina. This was indicative of intercranial pressure. Claimant was hospitalized. After an angiogram was made, surgery was performed by this physician that resulted in the removal of a large chronic extradural hematoma from the left parietal region. Dr. Spiegel's post-operative diagnosis indicated that the sixth cranial nerve that supplied the lateral rectus muscle of the eye was weak. This condition was indicative of double vision. Dr. Spiegel was of the opinion that the weakness in the sixth nerve was caused by the extradural hematoma. On cross-examination this witness said that the bloodclot was not caused by the skull fractures; rather the skull fractures and bloodclot were caused by a blow to the head.

Dr. Vernon Page, an ophthalmologist, was called by the employer. He had examined claimant about 2 years after the accident. He noted a refractive error in each eye which is a normal condition of life unless associated with a local trauma to the eye. Dr. Page said that he was unable to discern any objective condition of double vision. Assuming the validity of claimant's complaints of double vision, Dr. Page stated that these complaints indicated that only one sixth of the cardinal fields of vision were affected, i.e., vision to the "up and left." On cross-examination Dr. Page expressed the opinion that the red glass

test was subjective due to the fact that the examiner must rely to some extent on the credibility and integrity of the patient's responses. He did admit that double vision can be distressing because it can affect walking, grasping and other activities, although double vision of the type which claimant complained of would not ordinarily affect walking. In discussing possible solutions to a condition of "up and left" diplopia, Dr. Page discounted the use of eyeglasses as impractical and he described the dangerous nature of any corrective surgical procedure. He further expressed the view that to curtail all vision in one eye to remedy this form of double vision would be worse than the condition.

Claimant urges that the circuit court erred in setting aside the additional 60-week award for his fractured skull because he also sustained a specific loss of use of his left eye. He relies upon section 8(d) of the Workmen's Compensation Act that provides, in part:

> "(d) *** However, no compensation may be allowed for [a] fractured *** skull *** where there is awarded compensation for specific loss or loss of use of a member or members *caused in whole or in part by* such injury." (Emphasis added.) (Ill. Rev. Stat. 1969, ch. 48, par. 138.8(d).)

Citing *R. C. Mahon Co. v. Industrial Com.,* 45 Ill.2d 480, and *J. J. Grady Co. v. Industrial Com.,* 46 Ill.2d 471, claimant contends that the aforesaid statutory provision is designed to prevent double recovery for the same injury, but this section cannot prevent recovery for a fractured skull which has not caused a specific loss or loss of use in the same accident. Claimant concludes that the evidence establishes separate injuries and that the skull fracture did not "in whole or in part" give rise to the loss of use of the eye.

The employer maintains that there was a single blow to the head which fractured the skull subsequently giving rise to the extradural hematoma that caused the diplopia.

Had claimant sustained an independent trauma to the left eye, the employer implies that it would have no basis to question a multiple recovery.

In *Mahon* this court sustained multiple recoveries for separate concurrent injuries to the vertebra and heel. In the *Grady* case the employee's injuries, as relevant to this appeal, occurred when he fell from a fiery tractor which then rolled over him. In allowing separate awards we remarked that section 8(d) "does not preclude awards for both a fractured vertebra and for the loss of use of the legs, even if both debilities emanate from the same accidental injury, where, as here, there appears to be no causal connection between the vertebral fracture and the loss of use of the legs." (46 Ill.2d 471, 474.) We further held that in order for the appellant (employer) to benefit from the limitation imposed by section 8(d) it was necessary for the employer to show that one injury was related to the other. It is therefore clear where several injuries result from one traumatic event, this will not necessarily preclude multiple awards. And in order to limit a claimant to a single recovery, the employer must sustain the burden of proof as to the causal relationship between the injuries.

In reviewing the record we find that the employer has failed to sustain its evidentiary burden. Dr. Russman's testimony indicated that the diplopia may have been related to the skull fractures, although an entirely separate brain injury could also have caused double vision. Dr. Spiegel indicated that claimant's difficulty with his vision was caused by the bloodclot. He said, however, that the bloodclot was not related to the skull fractures but both injuries were caused by a blow to the head. The resolution of the issue concerning causal relationship between the multiple injuries was factual in nature and was to be decided by the Industrial Commission. Its decision is not contrary to the manifest weight of the evidence, and the circuit court erred in setting aside that determination.

The employer maintains that the award for complete loss of use of the left eye is contrary to the manifest weight of the evidence. No issue is raised that claimant's condition is not permanent. During oral argument counsel for the employer has conceded that claimant suffered "some" loss of use of the eye. It is the employer's position that the testimony of Dr. Page establishes that claimant's vision is affected in only one of the six fields of vision. It further relies on the examination results of Dr. Russman and Dr. Page which respectively diagnosed claimant's unaided vision as 20/70 in each eye and 20/40 with a refractive error. They both indicated that such vision was correctable to 20/20. Claimant's brief states Dr. Russman found that claimant had double vision "up and to the right" and "up and to the left." Claimant maintains that this encompasses "2/6 of the entire visual field," and he stresses the attendant visual difficulties resulting from such condition.

The court has held 'that "The loss of a member is complete when the normal use of the member has been taken away"; and in order to sustain an award for complete loss of use of an eye, it is unnecessary "to show total and complete loss of sight under all circumstances." (*Heaps v. Industrial Com.*, 303 Ill. 443, 447.) Further, we have held that the extent of a claimant's disability is to be determined by the Industrial Commission; and its decision will not be set aside unless contrary to the manifest weight of the evidence even though this court may have drawn other inferences therefrom. *Chicago Transit Authority v. Industrial Com.*, 61 Ill.2d 78, 85; *City of Chicago v. Industrial Com.*, 60 Ill.2d 283, 286.

The record is uncontradicted that claimant will continually experience difficulty when reaching for objects. Dr. Page also described his condition as distressing. While claimant's testimony as to his difficulty in walking down stairs was contradicted by Dr. Page, the latter's opinion was not unequivocal. The expert opinions ex-

pressed the view that the visual impairment could not be alleviated unless vision in one eye was completely curtailed. Moreover, even though the evidence established that claimant's eyesight was correctable to 20/20 vision, it is to be noted that the evidence does not indicate that this would favorably affect his condition of diplopia. Under the circumstances presented in this case, we cannot say that the Industrial Commission's decision was contrary to the manifest weight of the evidence.

Accordingly, the judgment of the circuit court of Cook County is reversed and the award of the Industrial Commission is reinstated.

*Judgment reversed; award reinstated.*