(No. 48604.—

SALVADOR SANTIAGO, Appellant, v. THE INDUS-TRIAL COMMISSION *et al.*—(Magne-Cast Division of Therm Appliance Mfg., Inc., *et al.*, Appellees.)

*Opinion filed April 5, 1977.*

Kenneth S. Lewis, of Chicago (Sidney Z. Karasik, of counsel), for appellant.

Ganan and Shapiro, of Chicago (Jay M. Shapiro, of counsel), for appellees.

MR. JUSTICE RYAN delivered the opinion of the court:

Claimant, Salvador Santiago, has appealed to this court for review of a decision of the circuit court of Cook County in a workmen's compensation case involving an eye injury. The arbitrator found that claimant has suffered a permanent loss of 10% use of his left eye. The Industrial Commission affirmed this award, and, on writ of *certiorari* to the circuit court, the Commission's decision was confirmed. Claimant appeals to this court pursuant to our Rule 302(a) (58 Ill. 2d R. 302(a)). We now affirm the judgment of the circuit court.

The sole contested issue was the nature and extent of the claimant's injury. On November 11, 1971, claimant was operating an air grinder when a chip of metal struck him in the left eye. Claimant was treated by Dr. Francis C. Dunn, Jr., for several months after the accident. Claimant was also examined by Drs. Alfred A. Stonehill and Vernon Page. The evidence introduced at the arbitration hearing consisted of the medical reports of these doctors and claimant's testimony. No additional evidence was introduced at the hearing before the Industrial Commission.

Dr. Dunn's report indicates that he first treated claimant for the November 11 injury on November 16, 1971. On November 19, 1971, claimant complained of

double vision to Dr. Dunn, and the visual acuity of his left eye was recorded as 20/50. During the course of his visits to Dr. Dunn, claimant intermittently complained of blurring and double vision. The visual acuity of claimant's injured eye fluctuated widely between 20/30 and 20/70 over the course of his visits to Dr. Dunn. Dr. Dunn's report concluded: "I feel that although this patient can see most of the 20/20 letters and read the 20/20 line with his injured left eye the corneal scar is impinging on his visual axis and is accounting for his double vision or blurred vision in the left eye." Dr. Dunn's report does not disclose whether any malingering tests were administered to claimant in order to verify the subjective responses to visual testing.

The only evidence introduced by respondent was the report prepared by Drs. Stonehill and Page. This report stated that there were several nebulae in claimant's left eye which could be related to double vision, and that reference should be made to the treating doctor's reports. The report also stated that claimant "admits 20/40-1" in the left eye. "However, he refuses to read with both eyes open when Polaroid glasses were in place. This suggests that this patient is not fully cooperating with the examiner insofar as visual testing is concerned. Most malingering tests are designed to establish a specific level of vision and depend upon binocular testing."

Claimant testified at the arbitration hearing concerning two additional injuries to his left eye. The first injury was in June 1971, prior to the injury upon which this case is based, and the second occurred in September 1972. Claimant was treated by Dr. Dunn for both of these work-related injuries. Claimant testified that after the first injury his vision returned to normal prior to November 11, 1971. Claimant also testified that the injury subsequent to November 11, 1971, did not affect his condition of double vision in any manner. Claimant further testified that he had suffered from double vision and blurriness ever since

the injury of November 11, 1971. As mentioned, no additional evidence was offered at the hearing before the Industrial Commission.

Claimant raises two issues in this appeal. First, it is asserted that the Industrial Commission's failure to award compensation for 100% loss of use of claimant's left eye is contrary to the manifest weight of the evidence. Alternatively, claimant contends that he has, at least, suffered a loss of vision of 20% in his left eye and that the Commission's award of 10% loss is against the manifest weight of the evidence.

Claimant relies upon prior decisions which have held that total loss of vision is not required to sustain a finding of industrial blindness to support his claim for an award for 100% loss of use of his left eye. (*C.S.T. Erection Co. v. Industrial Com.* (1975), 61 Ill. 2d 251, 257; *Central Waxed Paper Co. v. Industrial Com.* (1965), 32 Ill. 2d 154, 155.) Claimant maintains that as a result of his alleged condition of double vision he has suffered such an industrial blindness. (See *Juergens Bros. Co. v. Industrial Com.* (1919), 290 Ill. 420; *Lambert v. Industrial Com.* (1952), 411 Ill. 593.) The extent of a claimant's disability, however, is a factual question to be determined by the Industrial Commission, and its decision will not be set aside unless it is against the manifest weight of the evidence. (*Chicago Transit Authority v. Industrial Com.* (1975), 61 Ill. 2d 78, 85.) Also, in reviewing the record before us, we must keep in mind that it is the province of the Commission to draw reasonable inferences from the evidence (*Sopher v. Industrial Com.* (1976), 63 Ill. 2d 379, 382) and to determine the credibility of witnesses. *Excelsior Leather Washer Co. v. Industrial Com.* (1973), 54 Ill. 2d 318, 326.

In the present case, there was ample evidence from which inferences could be drawn that claimant had exaggerated the extent of his disability. The report of Dr. Dunn reveals that claimant did not complain of double

vision until this third treatment by that doctor. Thereafter, claimant alleged double vision on some, but not all, of his visits to Dr. Dunn. Throughout the detailed report of this doctor there is no indication that any objective, malingering testing was performed. In the report prepared by Drs. Stonehill and Page, as previously noted, it is stated that claimant refused to submit to malingering tests. In our view, there was sufficient evidence introduced from which the arbitrator and the Commission could conclude that claimant's subjective responses did not represent the true extent of his injury. We, therefore, hold that the failure of the Commission to enter an award for 100% loss of use of claimant's left eye was not contrary to the manifest weight of the evidence.

Claimant's alternative contention is that the evidence requires a finding that, at a minimum, he suffered a 20% loss of vision in his left eye. Claimant contends that the undisputed medical evidence establishes that his left eye had visual acuity of 20/20 prior to the accident and, at best, 20/40 subsequent to the injury. Claimant asserts that, under the vision table generally employed by the Commission to determine the percentage of loss of vision, visual acuity of 20/40 represents a 20% loss of use of the eye, while a measurement of 20/30 indicates a 10% loss of use.

Assuming *arguendo* that the above figures represent the formula used by the Industrial Commission, we find that the record contains sufficient evidence to support the 10% award. Claimant was seen by Dr. Dunn 12 times between November 16, 1971, and September 29, 1972. The claimant's uncorrected visual accuity in the left eye was recorded in the doctor's report on 10 of these visits. On three visits it was recorded as 20/30; on one as 20/30-1; on four as 20/50; on one as 20/60; and on one as 20/70.

On November 2, 1972, Drs. Stonehill and Page recorded visual acuity as 20/40-1. Claimant contends that this figure should be employed to determine the minimum

loss of vision he suffered. As noted, however, the Stonehill and Page report specifically noted that claimant was not cooperative and that he refused to submit to malingering tests. It is thus reasonable to infer that the 20/40-1 reading represents only claimant's subjective responses to the testing. The arbitrator and the Commission could reasonably infer that the results of this test did not accurately reflect the extent of claimant's disability. The substantial variance in the loss of visual acuity as reported by Dr. Dunn could also have been taken into account by the Commission. Upon our examination of the entire record, we cannot say that the Commission's award for 10% loss of use of the left eye was inaccurate or that it was contrary to the manifest weight of evidence.

Therefore, the judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*