(No. 49733)

JOHN WALKER, Appellant, v. THE INDUSTRIAL COMMISSION *et al.*—(Tootsie Roll Industries, Appellee.)

*Opinion filed September 19, 1978.*

George J. Murges, of Chicago (George J. Murges and John T. Bowman, of counsel), for appellant.

Morrill, Koutsky, Chuhak, Upton & Tecson, of Chicago (Marion N. Baruch, of counsel), for appellee.

MR. CHIEF JUSTICE WARD delivered the opinion of the court:

This is a direct appeal by the claimant, John Walker, under our Rule 302(a) (58 Ill. 2d R. 302(a)) from a judgment of the circuit court of Cook County which confirmed an Industrial Commission award of compensation for a 50% permanent loss of use of the left eye. The Commission, on review, had increased an arbitrator's award for a 20% loss of use. The claimant contends that under the evidence in the record he should have received an award for 100% permanent loss of use of the eye. In the alternative, he asks that we direct the entry of an award on the basis of uncorrected vision of 20/200 in the left eye.

The claimant is employed as a candy cook by the respondent, Tootsie Roll Industries. On October 24, 1974, while adjusting a machine that pumps chocolate paste into candy, the handle of his channel-lock pliers slipped and struck his left eye. The plant nurse treated his injury with ice packs and medicinal drops, and the following day sent him to a medical clinic. After several days of treatment at the clinic, he was referred to Drs. Vernon Page and Alfred Stonehill, opthalmologists engaged by the respondent. Their examination revealed a subcapsular cataract of the left eye which "could and might have resulted from the accident," and vision of 20/70 in both eyes, presumably without corrective lenses. Their report stated that the cataract condition might be progressive. Two examinations conducted approximately one year later by Dr. Burton Russman (the claimant's eye specialist) and Dr. Burton Zeiger disclosed uncorrected vision in the left eye of 20/200, and corrected vision of 20/60. Reports of both of these opthalmologists noted the subcapsular cataract.

The claimant testified at the hearing before the

arbitrator that he noticed nothing unusual in the vision in his left eye prior to the accident and that he had worn prescription glasses only to read fine print. His most recent automobile driver's license, which had been issued prior to the accident, was received into evidence, and showed no driving restriction of corrective lenses. He stated that he now wears prescription glasses for driving and reading fine print, and that he suffers from blurred vision, a condition which is somewhat corrected by the wearing of glasses.

The claimant frames the issue as being "whether compensation for eye injury should be determined by actual loss of vision [that is, as uncorrected] or as corrected by lenses." He argues that there was undisputed evidence of a vision loss in the left eye from what had been normal vision prior to the accident, to 20/200. He observes that this court described 20/200 to be "complete industrial loss of sight" in *Friel v. Industrial Com.* (1947), 398 Ill. 361, 362, and argues that an award for 100% loss of the use of the eye is therefore required.

We would first observe that the claimant's statement that "nothing in the record indicates *** any prior loss of vision" has to be regarded with circumspection. The claimant did testify that prior to his accident he used glasses only to read fine print, but he did not seek to introduce evidence of his prior vision from three eye examinations the record shows he had before the injury involved here. It should be noted, too, that in *Friel v. Industrial Com.* the only question involved was whether the claimant's injury arose out of his employment. The court's unstudied remark regarding industrial blindness was no part of the holding in the case.

The claimant's contention that his award was inadequate of course rests on the assumption that the Commission's finding of 50% loss was based upon a measurement of his vision loss as corrected, rather than upon an uncorrected loss. The record does not support that

assumption. There is nothing in the record to indicate how the claimant's loss was measured by the Commission. The finding is simply that there was a 50% loss of vision in the left eye.

The Workmen's Compensation Act is silent on the question of whether the extent of loss of use shall be determined on the basis of uncorrected vision or vision as corrected by the use of glasses. (Ill. Rev. Stat. 1973, ch. 48, par. 138.8(e); *Lambert v. Industrial Com.* (1952), 411 Ill. 593, 599.) This court, however, in *Lambert* considered this question and observed that the decisions of other jurisdictions are in conflict. The court said:

> "The general question, whether corrected vision is a factor in determining the extent of eye injuries, has been before the courts of other States and the decisions are in sharp conflict. This conflict is clearly shown by the cases and annotations appearing in 8 A.L.R. 1322, 24 A.L.R. 1462, 73 A.L.R. 706, 99 A.L.R. 1492, 142 A.L.R. 816. A study of these cases reveals that they cannot be reconciled and the courts are not in harmony on this question. Some of the differences are due to variation in the wording of the statutes. Many of the differences are due to the court's interpretation of the purpose of the statute, *i.e.,* if the purpose of the statute is to compensate in a specific amount for a specific loss, naked vision, alone, should be considered, but if the purpose of the statute is to compensate for loss of earning power, then corrected vision should be a factor. Another cause of the conflict, not only between the different jurisdictions but even within the same jurisdiction, lies in the inclination of the courts to do justice in the case then before it with no intention of establishing a rule binding in all other cases." *Lambert v.*

*Industrial Com.* (1952), 411 Ill. 593, 603.

The court concluded that the most acceptable view was that the extent of the loss of use of the eye is a question of fact in each case and is not one to be determined by a mechanical measurement as to corrected vision or uncorrected vision. The court rejected the standard of corrected or uncorrected vision, observing:

"The real difficulty, and one of the causes of the lack of harmony in the authorities, lies in the fact that neither rule is adequate to cover all cases. If naked vision, alone, is considered, the worker with corrected vision is not adequately protected, and if corrected vision, alone, is considered, the worker with uncorrected vision is not fully protected. In the first instance, the loss of an eye 'industrially blind' with naked vision, but normal with correction, would not be compensable; in the second, an injury rendering a normal eye industrially blind would not be compensable if it could be corrected to normal by the use of glasses." *(Lambert v. Industrial Com.* (1952), 411 Ill. 593, 604.)

Thus, in this jurisdiction the extent of loss of the use of an eye is a question of fact and the finding of the Industrial Commission on it will not be disturbed on review unless the finding is contrary to the manifest weight of the evidence. (*Santiago v. Industrial Com.* (1977), 66 Ill. 2d 356, 359; *C.S.T. Erection Co. v. Industrial Com.* (1975), 61 Ill. 2d 251, 257; *Lambert v. Industrial Com.* (1952), 411 Ill. 593, 607-08. See generally W. Schneider, Workmen's Compensation secs. 2346(d), (e), at 727-37 (3d ed. 1957); 2 A. Larson, Workmen's Compensation sec. 58.13 (1976).) This is of course without prejudice to the rights of a claimant under section 19(h) of the Workmen's Compensation Act (Ill. Rev. Stat. 1977, ch. 48, par. 138.19(h)) in the event of an increase in the disability.

The claimant also contends that the award made does not correspond to the percentages table he says is sometimes used by the Commission in cases involving losses of vision. But if that is so, it is not material, for as this court said in *Hamilton Engineering Co. v. Industrial Com.* (1947), 399 Ill. 30, 41: "The legislature has not seen fit to provide or establish any standard or table with which to measure the extent of vision, and their use and reference thereto are to be considered only as elements of the evidence." Too, it may be observed that the percentage tables referred to in the claimant's and respondent's briefs are not themselves in agreement as to what percentage losses are indicated by defined objective measurements. This serves to point out the difficulty, or even futility, of attempting to use a single standard or table to govern the measurement of vision losses in every case regardless of its circumstances.

The finding of the Commission is not contrary to the manifest weight of the evidence and reasonable inferences to be drawn from it. It will not be disturbed simply because this court might have drawn other inferences. Accordingly, the judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*