(No. 50780.—

STATE TREASURER OF ILLINOIS, Appellant, v. THE INDUSTRIAL COMMISSION (Jacqueline Young *et al.,* Appellees.)

*Opinion filed April 3, 1979.*

242

William J. Scott, Attorney General, of Springfield (Dennis R. Greene, Assistant Attorney General, of Chicago, of counsel), for appellant.

J. Michael Madda, of Chicago (John E. Flavin and Charles Wolff, of counsel), for appellee Jacqueline Young.

Burgeson, Laughlin, Cunningham & Smith, of Chicago (Richard W. Baum, of counsel), for appellees Ampex Corporation and Employers Insurance of Wausau.

MR. JUSTICE RYAN delivered the opinion of the court:

This is an appeal under our Rule 302(a)(2) (58 Ill. 2d R. 302(a)(2)) from a Cook County circuit court confirmance of an Industrial Commission award. The Commission found that the claimant had 100% loss of sight in her left eye prior to February 1974, and subsequently suffered a 100% loss of sight in her right eye in a February 4, 1974, accident at the Ampex Corporation. Under the Workmen's Compensation Act (Ill. Rev. Stat. 1973, ch. 48, par. 138.1 *et seq.*), Mrs. Young will receive a lifetime pension, payable in part out of the Second Injury Fund. The State Treasurer of the State of Illinois, as custodian of the Second Injury Fund, has brought this appeal.

The primary issue posed is whether this award, allowing recovery from the Second Injury Fund, is against the manifest weight of the evidence.

On February 4, 1974, Jacqueline Young, an employee of Ampex Corporation, was injured when four or five boxes, weighing approximately 21 pounds each, fell eight feet and hit her. She was sent to the O'Hare Clinic, where she was examined and given medication to relieve headaches and dizziness. Mrs. Young's eye problems began several weeks after the accident when she developed diplopia (double vision). Her personal doctor referred her to Dr. Irwin Menachof and Dr. Howard Tessler, eye specialists. Dr. Tessler, after consulting other doctors, recommended surgery in an attempt to correct the diplopia. In December 1974 and February 1976 surgery was performed. Both were unsuccessful, and Mrs. Young must wear an occluder over one eye in order to relieve the double vision. As a consequence, she has only the effective use of one eye.

In 1967, Mrs. Young had been involved in a serious automobile accident. She was comatose for seven weeks, but apparently fully recovered. In 1969, she underwent a complete physical examination as a prerequisite to her hiring by Ampex. Records of that examination indicate that her sight was 20/200 in each eye. That sight however was correctable to 20/20, and she suffered from no other occular disorder.

The arbitrator awarded Mrs. Young complete disability for 100% loss of the use of her left eye and 100% loss of the vision of her right eye. He found that the disability was the result of the February 4 accident. The Industrial Commission considered the evidence available to the arbitrator, the medical records of the 1967 automobile accident, and the 1969 preemployment physical examination. The Commission concluded that Mrs. Young had lost the sight of her left eye prior to the 1974 accident and had

lost the sight of her right eye in the 1974 accident. As a consequence, Ampex was liable under the statute for only the 100% loss of use of a single eye. The Second Injury Fund, under the Commission's finding, must provide a lifetime pension to Mrs. Young because of the prior loss of sight of her left eye. Ill. Rev. Stat. 1973, ch. 48, par. 138.8(f).

Second Injury Fund liability could arise only if Mrs. Young suffered the loss of one eye prior to February 1974. The Workmen's Compensation Act provides:

> "If an employee who had previously incurred loss or the permanent and complete loss of use of one member, \*\*\* incurs permanent and complete disability through the loss or the permanent and complete loss of the use of another member, he shall receive, in addition to the compensation payable by the employer and after such payments have ceased, an amount from the Special Fund [now the Second Injury Fund] provided for in paragraph (f) of Section 7, which, together with the compensation payable from the employer in whose employ he was when the last accidental injury was incurred, will equal the amount payable for permanent and complete disability \*\*\*." Ill. Rev. Stat. 1973, ch. 48, par. 138.8(f).

Recovery under the Second Injury Fund requires a finding that prior to the most recent industrial accident the claimant had suffered the complete loss of or loss of use of one member. That loss may have resulted in a prior award, or it may have occurred outside the Workmen's Compensation Act, but it "must have been of a physical quality capable of supporting an award if the other elements of compensability were present." (2 A. Larson, Workmen's Compensation sec. 59.32, at 10–296 (1976).) The analysis of the first injury must meet the standards applicable to an industrial injury, and the "loss of use of the eye is a question of fact in each case and is not one to be determined by a mechanical measurement as to corrected vision or uncorrected vision." (*Walker v. Indus-*

*trial Com.* (1978), 72 Ill. 2d 408, 413; see also *Lambert v. Industrial Com.* (1952), 411 Ill. 593.) A finding by the Commission "will not be set aside unless contrary to the manifest weight of the evidence ***." *C.S.T. Erection Co. v. Industrial Com.* (1975), 61 Ill. 2d 251, 257; *Walker v. Industrial Com.* (1978), 72 Ill. 2d 408, 413; *Motor Wheel Corp. v. Industrial Com.* (1979), 75 Ill. 2d 230.

Though the Commission may consider corrected or uncorrected vision in finding a disability, it cannot apply both standards simultaneously to the same claimant for the same alleged injury. Here, Mrs. Young's visual acuity uncorrected was 20/200 in each eye prior to the February 4, 1974, accident. Whether that constituted "industrial blindness" was a question of fact for the Commission, but if Mrs. Young's 20/200 uncorrected vision justified a finding of blindness in her left eye, then it also constituted blindness in her right eye. On the other hand, if she was fully sighted in her right eye, because of her corrected vision of 20/20, then she was fully sighted in her left eye. The Commission's finding that Mrs. Young had suffered a 100% loss of the use of her left eye prior to 1974 and the implicit finding that she had suffered no diminution in the use of her right eye is clearly contrary to the manifest weight of the evidence in light of the identical vision in both of her eyes. Mrs. Young was sightless in both eyes or neither eye before the industrial accident, and, as a consequence, the award from the Second Injury Fund must be reversed.

The remaining finding of the Industrial Commission, that the February 4, 1974, accident caused the 100% loss of Mrs. Young's right eye, is supported by this record. Despite surgery the claimant is still plagued by double vision. In order to relieve that double vision she is required to wear an occluder that will cut off the sight of one eye. Though she is able to work, she works with the sight of only one eye. The accident of February 4, 1974, clearly

deprived her of the use of one eye. The finding and award for the loss of use of the right eye due to the claimant's diplopia is supported by the record. *Cf. C.S.T. Erection Co. v. Industrial Com.* (1975), 61 Ill. 2d 251.

Mrs. Young contends that the only question before this court is whether the arbitrator or the Commission was correct. In either event, she contends she would be entitled to an award for permanent total disability. However, contrary to her contention, the State Treasurer does not argue only that Ampex should pay the total award for total permanent disability. In the circuit court, counsel for the State Treasurer argued:

> "We would contend that she is not industrially blind in both eyes; that with the patch on the one eye, she has to wear that to correct the double vision, she, for all intents and purposes, is industrially blind in the one eye but not in the other. And we would conclude, your Honor, by stating that if she was not industrially blind before the accident and lost the vision in one eye, the the finding of the Commission should be reversed and the finding entered that she is now only blind in one eye."

In this court the State Treasurer has made a similar argument and now requests that we either reinstate the decision of the arbitrator or remand the cause for a decision consistent with the facts. We conclude that the decision that Mrs. Young suffered 100% loss of the sight of her left eye prior to 1974 is contrary to the manifest weight of the evidence. We hold that the decision that Mrs. Young suffered 100% loss of the sight of her right eye as a result of the accident is not contrary to the manifest weight of the evidence and is affirmed. We remand the cause to the Industrial Commission for the purpose of entering an award in favor of Mrs. Young consistent with these holdings.

*Affirmed in part and reversed in part and remanded, with directions.*