DANLY MACHINE CORPORATION, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Robert Kamm, Appellee).

First District (Industrial Commission Division) No. 1—87—2498WC

Opinion filed June 22, 1988.

Seyfarth, Shaw, Fairweather & Geraldson, of Chicago, for appellant.

Arnold E. Landsman, of Chicago, for appellee.

JUSTICE McNAMARA delivered the opinion of the court:

The Industrial Commission (Commission) awarded claimant, Robert Kamm, compensation and benefits for 100% loss of use of his right eye as the result of an industrial accident which occurred while employed by Danly Machine Corporation. The trial court confirmed the decision of the Commission. On appeal, Danly maintains that claimant failed to prove a causal relationship between the accidental injury he sustained on the job and his condition of ill-being. Danly also contends that the Commission's finding that the nature and extent of claimant's injuries amounted to 100% loss of use of his eye is against the manifest weight of the evidence.

Claimant was hired by Danly in 1950. A preemployment physical revealed that he had vision of 20/200 in his right eye. In 1979, claimant was still employed by Danly and was working as a machine operator. His duties included reading blue prints and veneers, setting up jobs and machining those jobs. On January 10, 1979, claimant was striking a piece of metal with a hard hammer when a piece of the metal broke, shattered and flew up, striking claimant in the right eye. Although claimant was wearing safety glasses at the time, the metal flew up under the safety glasses and penetrated his eye.

Claimant testified that immediately after the accident, his eye was bleeding, he saw black and white and then could not see anything out of that eye. Danly sent him to see Dr. Nootens, an eye specialist, who examined claimant and admitted him to the hospital. Claimant underwent surgery for the removal of a steel sliver in his right eye and spent six days in the hospital.

Claimant returned to his regular job as a machine operator on April 2, 1979. Claimant was fitted for new glasses but testified that even with the new glasses he could not read the first line of the eye chart. Previously, he was able to read the third line of the eye chart.

On May 24, 1979, claimant was examined by Dr. Nootens. Claim-

ant's vision in his right eye was counting fingers at eight feet and his best corrected vision in the left eye was 20/20. Dr. Nootens reexamined claimant in October 1979. Claimant's best corrected vision in the right eye was 20/80 and 20/25 in the left eye.

At a hearing before the arbitrator in September 1981, claimant testified that after the accident, he could see light and dark objects. He stated that his right eye is blurry and it tears a lot and he gets more headaches now than before the accident. He testified that prior to the accident he could read and identify people with his right eye if wearing glasses. Since the accident, however, he cannot read at all with his right eye and cannot distinguish people on his right side.

Dr. Nootens reviewed claimant's medical record with claimant's optometrist and found that his right eye has always been an amblyopic eye and he is extremely myopic.

On January 20, 1981, claimant was examined by Dr. Feinhandler at the request of his attorney. Dr. Feinhandler's examination revealed that claimant could only count fingers at two feet with his right eye and that refraction left the right eye unimproved. Upon rechecking the refraction of claimant's right eye, Dr. Feinhandler measured its vision to be 20/400 and blurry. Dr. Feinhandler's diagnosis and prognosis found that claimant was operated on for a perforating metallic foreign body in the right globe, which caused a scleral-conjunctival scar in the right globe. Claimant also has severe myopia in the right eye. The myopia appeared to be congenital and, by itself, would not necessarily cause such a severe loss of vision. Dr. Feinhandler stated that part of the loss of vision is due to the cataract change in the right eye, which, in itself, is not sufficient to cause 20/400 decrease of vision. "Part of the loss of vision, therefore, could be due to the injury and sequelae. To determine the exact percent of loss one would have to know the pre-traumatic visual acuity." Dr. Feinhandler also stated that claimant's very low ocular tension may be indicative of a severe traumatic insult to the right eye and might indicate possible future complications.

Based on this evidence, the arbitrator found in favor of claimant, finding 100% loss of use of the right eye.

Before the Commission, Danly offered additional medical evidence. According to Dr. Lee, a doctor to whom Dr. Nootens referred claimant, claimant's poor vision was due to amblyopia secondary to anisometropia, high myopic retina degeneration and some cataract in that eye. Dr. Lee stated that the cataract may be due to the injury claimant sustained but that the rest of his condition is due to congenital changes. Dr. Lee stated that claimant could only count fingers at

one foot and that the right eye was 20/200 at two inches without glasses.

Claimant was also referred to Dr. McLachlan for an ultrasound A-scan and B-scan. According to Dr. McLachlan, the claimant had a marked abnormality in the size of the globe on the right side which would appear to be from a congenital abnormality unrelated to any trauma. Such a condition would be responsible for reduced vision in a given eye with a markedly myopic or large eye. The ultrasound revealed no sign of damage to the right eye.

The Commission affirmed the decision of the arbitrator and adopted the specific findings of the arbitrator. The trial court confirmed the decision of the Commission. Danly appeals.

Danly's first contention on appeal is that claimant has failed to prove a causal connection between the accident sustained at work and his state of ill-being. Danly maintains that claimant has failed to offer competent medical evidence to support his claim and that reliance on the testimony of Dr. Feinhandler is insufficient to support a finding of causal connection.

It is well established that an employee is entitled to recover for all the consequences of an aggravation to a preexisting condition or where he sustains an accidental injury which aggravates a diseased condition. (*County of Cook v. Industrial Comm'n* (1977), 68 Ill. 2d 24, 368 N.E.2d 1292.) The accident need not be the sole cause or even the principal cause of the disability. The employee must only prove that it was a causative factor. *County of Cook,* 68 Ill. 2d 24, 368 N.E.2d 1292, citing *Leason v. Industrial Comm'n* (1973), 55 Ill. 2d 486, 303 N.E.2d 414.

It is within the province of the Commission to determine disputed questions of fact, to draw inferences from the evidence and to resolve questions of causal relationship based upon conflicting medical testimony. A reviewing court will not disturb the finding of the Commission unless it is against the manifest weight of the evidence. *County of Cook,* 68 Ill. 2d 24, 368 N.E.2d 1292; *Illinois Institute of Technology v. Industrial Comm'n* (1975), 60 Ill. 2d 64, 322 N.E.2d 828.

In the present case, it is undisputed that claimant sustained an injury arising in and out of the course of his employment. He underwent surgery to remove a steel particle from his right eye. Danly maintains however, that evidence of a preexisting congenital condition accounted for claimant's loss of vision in his right eye. We disagree. The Commission was entitled to rely on testimony of claimant himself. He testified that prior to the accident he could read with his

right eye if wearing glasses. After the accident, he could not read even when wearing glasses. When claimant was tested for new glasses after the accident, he could not read the first line of the eye chart. Previously, he had been able to read to the third line. After the accident, his right eye was blurry and teared a lot. This testimony alone permits an inference of causal connection sufficient to support the award. Several courts have held that a claimant may recover on his or her testimony without corroboration. *Greater Peoria Mass Transit District v. Industrial Comm'n* (1980), 81 Ill. 2d 38, 405 N.E.2d 796; *Interlake Steel Co. v. Industrial Comm'n* (1985), 136 Ill. App. 3d 740, 483 N.E.2d 979.

 █ Danly further maintains that the Commission relied on the testimony of Dr. Feinhandler, and that such testimony was mere speculation and conjecture and thus insufficient to support an award. Danly cited *County of Cook* for the proposition that liability under the Act cannot rest upon imagination, speculation or conjecture, but must be based solely upon the facts contained in the record.

In *County of Cook*, the claimant suffered a stroke while rising from her desk at her job in the Cook County recorder's office. Claimant had suffered from hypertension for 10 years prior to this and was hospitalized for high blood pressure several times. At the time of the stroke, claimant had only been employed by the county for one year, and her duties involved handling large books. The court found that a testifying doctor was merely speculating or conjecturing about what could have been the effect of the lifting of the books, and such testimony was not sufficient to establish causal connection under the Act.

In the present case, Dr. Feinhandler found a permanent scleral-conjunctival scar on the right globe due to the removal of a perforating metallic foreign body. He also found myopia in the right eye, which in itself would not cause such a severe lack of vision. He found that part of the loss is due to the cataract change in the right eye, which also by itself is not sufficient to cause such a great loss of vision. Dr. Feinhandler therefore concluded that part of the loss of vision could be due to the injury and sequelae. Dr. Feinhandler's findings differ from the testimony of the doctor in *County of Cook*. There, the doctor could not predict with what probability the action of the claimant was responsible for her stroke. In the present case, Dr. Feinhandler knew that claimant suffered the accident at work and underwent surgery to remove the steel particle from his eye. Dr. Feinhandler opined that claimant's previous eye problems were not necessarily responsible for such a severe loss of vision and therefore concluded that part of the loss of vision could have been caused by the injury.

Furthermore, in addition to the evidence of Dr. Feinhandler, Dr. Lee stated in his medical report that it is possible that claimant's right eye amblyopic vision became worse following the accident due to the development of cataract in his right eye. Dr. Lee made it clear that the cataract may be due to the injury which he sustained. Under these circumstances, we cannot say that the finding of causal connection was based upon speculation or conjecture. The Commission did base its result upon facts contained in the record and could properly conclude that the accident sustained by claimant was at the least a causative factor of his present condition of poor vision.

Danly cites the case of *Interlake Steel Co. v. Industrial Comm'n* (1985), 136 Ill. App. 3d 740, 483 N.E.2d 979, for the proposition that medical testimony is required to support a finding of causal connection. In *Interlake,* the claimant was found to have lipoma tumors on her upper left arm. She testified that she noticed the lumps on her arm during the time she was employed by the respondent. Other than this testimony, there was no evidence that the tumors were work related. The court found that the expert testimony demonstrated that the tumors existed before the claimant commenced work for the respondent and that the tumors were not related to her employment. The *Interlake* court noted that although medical testimony as to causation is not necessarily required (*Westinghouse Electric Co. v. Industrial Comm'n* (1976), 64 Ill. 2d 244, 356 N.E.2d 28), where the question is one within the knowledge of experts only and not within the common knowledge or comprehension of laymen, expert testimony is necessary to show that a claimant's work activities caused the condition complained of. In the present case, both sides offered medical evidence. In addition, claimant here, in contrast to the claimant in *Interlake,* clearly suffered an injury which was related to his employment and was able to describe the change in his eye condition. The Commission heard and weighed the evidence and drew inferences therefrom. We do not believe that the conclusion of the Commission that there was a causal connection between claimant's accident and his present condition is against the manifest weight of the evidence.

■ Danly's next contention on appeal is that the finding of the Commission that the nature and extent of claimant's injury amounted to 100% loss of use of the eye is against the manifest weight of the evidence. Danly urges this court to consider claimant's preaccident visual acuity and argues that to award him for 100% loss of use of his eye would be a windfall gain because prior to the accident, claimant did not have good vision.

Several cases have treated the measure of damages when a claim-

ant has lost vision. In *Lambert v. Industrial Comm'n* (1952), 411 Ill. 593, 104 N.E.2d 783, the court recognized the split in authority for the use rules based on corrected versus uncorrected vision. The court stated that neither rule would adequately protect all claimants. Thus, in *Walker v. Industrial Comm'n* (1978), 72 Ill. 2d 408, 381 N.E.2d 238, the court, relying on *Lambert,* stated that the extent of loss of vision is a question of fact and that the Commission's finding with respect thereto will not be disturbed unless contrary to the manifest weight of the evidence and the reasonable inferences to be drawn therefrom. The court further stated that the degree of loss of vision is not to be determined solely by a mechanical measurement as to corrected or uncorrected vision.

All subsequent cases have refused to apply a strict rule and clearly the Commission may base an award for loss of vision on either corrected or uncorrected vision depending on the circumstances of the case. In a case similar to ours, *Gilbert & Shughart Painting Contractors v. Industrial Comm'n* (1985), 136 Ill. App. 3d 163, 483 N.E.2d 392, the claimant testified that prior to his accident at work he did not wear glasses and knew of nothing wrong with his eyes. The claimant suffered an accident and underwent surgery for removal of traumatic cataract and interior vitreous. His final diagnosis revealed corrected vision in the injured eye of 20/30. Uncorrected, vision in the eye was reduced to light perception and finger counting at four feet. The claimant was awarded 100% for permanent and complete loss of vision. The decision of the Commission was upheld by the circuit and appellate courts as not against the manifest weight of the evidence.

In the present case, the Commission was entitled to consider claimant's testimony as well as the medical evidence to determine the nature and extent of his loss. Claimant testified that prior to the accident, he could identify people and read with his right eye. After the accident, claimant could see light and dark objects, but could not distinguish anybody on his right side. Also since the accident, claimant could not read at all with his right eye. Even with new glasses after the accident, claimant could not read the first line of the eye chart with his right eye. Dr. Feinhandler found that after the accident, claimant could only count fingers at two feet. We do not believe that the finding of the Commission regarding 100% loss of use of the eye is against the manifest weight of the evidence.

■■ Danly also contends that the finding of 100% loss of use cannot stand because claimant failed to provide the Commission with evidence regarding his preaccident visual acuity. Danly maintains that every case discussing loss of vision includes evidence of the preacci-

dent vision of the claimant. Dr. Feinhandler stated that to determine the exact percent of loss one would have to know the pretraumatic visual acuity. We acknowledge that the record does not indicate claimant's exact level of vision prior to the accident. Nonetheless, the Commission properly relied on the testimony of claimant himself that prior to the accident he could read and identify people with his right eye, and after the accident he could not. No cases require exact visual acuity, and unless a claimant was recently examined, such information would not normally be available. We believe that the Commission was entitled to decide that claimant suffered 100% loss of use of his eye.

For the reasons stated, the judgment of the circuit court of Cook County confirming the decision of the Industrial Commission is affirmed.

Judgment affirmed.

BARRY, P.J., and WOODWARD, McCULLOUGH and CALVO, JJ., concur.